FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 1 2 2010

JAMES N. HATTEN, CLERK
By:
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| CARLOTTA BLOUNT-CUMMINS<br>   **PLAINTIFF** | * | **CIVIL ACTION** |
| | * | 1 10-CV- 7091 |
| **v.** | * | **FILE NO:** |
| GENERAL DYNAMICS<br>INFORMATION TECHNOLOGY, INC.<br>   **DEFENDANT** | * | **Jury Trial Demanded** |

**CAP**

## COMPLAINT

COMES NOW Carlotta Blount-Cummins, hereinafter Plaintiff, and brings

this her action as against General Dynamics Information Technology, Inc.,

hereinafter Defendant, and for cause respectfully shows as follows:

### PARTIES, JURISDICTION AND VENUE

1.

This action is filed under Title VII of the Civil Rights Act, as amended, 42

USC § 2000e, *et seq*, and 42 USC § 1981a ("Title VII") as well as 42 USC § 1981

("1981").  Plaintiff also seeks an award of costs and attorney's fees for prosecuting

this action as provided by 42 USC § 1988.  Subject matter jurisdiction is conferred

upon this Court by 28 USC § 1331.

2.

Plaintiff seeks monetary damages for lost pay and benefits, mental and emotional suffering, liquidated and punitive damages, and a declaratory judgment that Defendant discriminated and retaliated against her on account of her race, gender and sex as well her having engaged in protected conduct in violation of Title VII as well as on account of her race in violation of §1981.

3.

Plaintiff is an African-American female citizen of the United States and who at all times relevant to this complaint was employed by Defendant.

4.

Defendant is a Foreign For Profit Corporation and may be served through its registered agent for service of process in Georgia: CT Corporation System, 1201 Peachtree Street, NE, Atlanta, Georgia 30361 (Fulton County).

5.

Venue in this action is proper pursuant to 28 USC § 1391.  The Defendant is considered a resident of the Northern District of Georgia because, in part, its registered agent in Georgia is located in the Atlanta Division of the Northern District of Georgia.

Most of the acts complained of herein which give rise to the instant action occurred in or around the Kandahar Air Field in the sovereign State of Afghanistan.

## ADMINISTRATIVE REQUIREMENTS

### 6.

Plaintiff timely filed a Charge of Discrimination based on age and gender against the Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about December 14, 2009.  A copy of the same is attached hereto as Exhibit "A" and made a part of this Complaint as if the allegations asserted therein were sound herein verbatim.

### 7.

Plaintiff received a Notice of Right to Sue from the EEOC dated January 26, 2010 on or about January 29, 2010, and has filed this action within ninety (90) days of her receipt of same.

## STATEMENT OF FACTS

### 8.

Plaintiff began her employment with Defendant in December of 2005.  Peter Kim, a male, was hired in 2007.

-3-

9.

Plaintiff and Kim were coworkers at the Kandahar Airfield in Afghanistan. From the beginning of the Plaintiff's work relationship with Kim, Kim performed less duty than Plaintiff in terms of compensation he received. Plaintiff regularly performed both her assigned tasks and the tasks for which Kim was employed.

10.

Kim would regularly engage in online chat and email exchanges while the Plaintiff would engage in the work related activities for which they were both assigned.

11.

Plaintiff complained of Kim's conduct, but no meaningful solutions were enacted. In fact, after the complaints, her relationship with Keith Deville, her team leader after October 2008, deteriorated to such a point that he would scream and yell at the Plaintiff for her not completing Kim's duties, and making other demands on her that were not made of Kim.

12.

Defendant's military customers were also complaining of Kim's behavior and deficient performance.

13.

In February of 2009, Plaintiff and Kim received a merit increase in their pay. Kim told the Plaintiff the amount of his increase, which was the same as the amount of Plaintiff's increase.

14.

Plaintiff questioned Deville regarding the parity of merit raise versus the disparity of work vis a vis Kim and herself. Deville informed her that the raise recommendations were changed from what he submitted; he further told her that she should be happy with getting anything because there was no right to a merit increase with the Defendant, at all.

15.

This behavior of the company with regards to Kim compared to the Plaintiff when awarding raises forms a basis of Plaintiff's claim of discrimination. Plaintiff was more qualified, performed more duties, and received fewer complaints than Kim, a male, yet they both received the same merit increase. This was a recurring theme.

16.

Kim requested, and was granted, a transfer in July 2009, after two years of Plaintiff's complaints about his performance.  After his transfer, Plaintiff's work duties and volume did not change.  As before, she was performing the duties of a 'lead' engineer, but she was not getting compensated for being 'lead'.

17.

George White, another male, was transferred to Plaintiff's team after Kim left; he was hired by Deville to be a network engineer.   White also refused to perform system-side duties, which were duties he was hired to perform as he was supposed to replace Kim.  Despite his refusal to do what he was hired to do, Plaintiff was the one disciplined because the work was not done.

18.

During Kim's tenure, he was allowed to put down time worked over his normal hours for which he was compensated; however, Deville also allowed White to put down hours he did not work and receive the same compensation as if he had worked them.

19.

Plaintiff was not allowed to put down hours she worked over her scheduled twelve, which were many; nor was the Plaintiff ever compensated for those hours.

20.

Defendant's paying White, a male, for hours he did not work over his normal twelve, while denying the Plaintiff, a female, compensation for hours she did work over her normal twelve, forms a basis of Plaintiff's claim for discrimination.

21.

On August 16, 2009, Plaintiff was given a written disciplinary warning by Tony Francis, Deville's supervisor.  When Plaintiff asked to see the complaint the warning was based upon, Deville told the Plaintiff that the Company did not have a policy that required such a showing.

22.

Plaintiff conducted an investigation of her own into the nature of the supposed 'complaint' lodged against her.  No one at any level of her customer's chain of command made a complaint.

23.

No evidence was presented to, or discovered by, the Plaintiff to indicate

there was even a 'complaint' upon which the written warning was based. Since a

written warning is part of Defendant's progressive discipline policy, it is

detrimental to the Plaintiff with regards to raises, promotions, and/or even

continued employment, Plaintiff believes that the issuing of the written warning

was in retaliation for protected conduct to that point.

24.

Plaintiff engaged in protected conduct prior to the issuance of the warning;

no information or evidence regarding the nature of the complaint exists; the

warning is an adverse action or serves as a basis for an adverse action.  The

protected conduct and adverse action are causally related.

25.

In November 2009, Plaintiff filed an EEO complaint with Defendant's HR

department detailing the systematic discrimination of the past years.  She received

an email from Charles Valentini, the individual investigating Plaintif's EEO

complaint, on November 24, 2009; he requested a time and number where they

could talk confidentially.  Plaintiff responded to his request on December 2, 2009.

As of the date of her EEOC complaint, Plaintiff had not received any further communication from Valentini.

26.

On December 3, 2009, Plaintiff received a 'position expectation' Email from Francis regarding her inability to use the computer program 'VISIO' on a project assigned her by Deville (even though she had told Deville of her inability to use the program and her need for training). She was also accused of yelling at Deville in the same Email, but no mention is made of Deville yelling at the Plaintiff. Plaintiff believes the Francis Email was issued in retaliation for her EEO Complaints and designed to further adversely affect her under Defendant's progressive discipline policy, to the extent such policy exists.

27.

On December 7, 2009, Deville sent Barbara Washington, a white female, to assist the Plaintiff in Kandahar while Washington awaited approval of her visa to travel on to Pakistan.

28.

Base housing informed Washington that she would have to live in transient

housing, or tents.  Washington then contacted Deville who made arrangements for

her to living in NATO housing in an apartment by herself.  Deville made no such

arrangements for the Plaintiff to move from her tent (transient housing) into an

apartment despite being personally aware of Plaintiff's housing situation, and

Plaintiff having requested more commodious housing on numerous occasions.

29.

When Plaintiff was hired by Defendant, she request a salary break down and

was informed that employees were not entitled to copies of their salary

breakdowns.  However, Washington did receive one.  Washington's salary

breakdown clearly states that for employees in Afghanistan, the base salary is

$85,000.00.  However, Plaintiff's base salary started at $64,500.00.  Even now it is

only $70,100.00, and this increase is due to her merit raises over the years.

30.

Washington, a white female, with similar if not identical qualifications, is

being paid more than the Plaintiff; similarly, Plaintiff is not even being paid the

Defendant's base salary for the position she holds, unlike her white counterpart.

Defendant's failure to pay the Plaintiff on par with her white counterpart, along

with paying her less than the base salary of a white employee of similar, if not

identical qualifications, is unlawful and discriminatory.

31.

All acts by Defendant complained of herein were intentional and were taken

in willful disregard for Plaintiff's federally protected rights.

## COUNT I

## RACE DISCRIMINATION: VIOLATION OF § 1981

32.

The Plaintiff incorporates by reference each allegation contained in

paragraphs 1 through 32 as though fully repeated herein.

33.

The actions of the Defendant as set out above in discriminating against her

on racial grounds, were committed with reckless disregard for the right of plaintiff

to be free from discriminatory treatment and retaliation on account of her race, in

violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

34.

The effect of the above-mentioned actions have been to deprive the Plaintiff of equal employment opportunities and benefits due her as a worker because of her race.

35.

The Plaintiff has suffered and will continue to suffer irreparable injury from the policies and practices of Defendant as set forth in this complaint.

36.

The Plaintiff is entitled to equitable and monetary relief for the Defendant's violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## COUNT II

## TITLE VII

37.

Plaintiff incorporates by reference the allegation in Paragraphs 1 though 36 of this Complaint as if fully stated herein.

38.

Defendant's actions complained of herein have violated Plaintiff's rights to be free from gender, sex, and race discrimination as well as retaliation for complaining about the same with regard to the terms and conditions of her employment.

39.

The Plaintiff is entitled to equitable and monetary relief for the Defendant's violation of Title VII.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays as follows:

(a) that Summons issue and Defendant be served as by law provided;

(b) that Plaintiff have judgment in her favor with respect to all contentions in her Complaint;

(c) that Plaintiff have an award of actual and liquidated damages as proven at trial;

(d) that Plaintiff have an award of compensatory damages for mental and emotional suffering in an amount to be determined by the enlightened conscious of a jury;

(e) that Plaintiff have an award of punitive damages in an amount to be

determined by a jury at trial to be sufficient to prevent such conduct as

alleged herein from occurring in the future and commensurate with the harm

done to Plaintiff;

(f) that Plaintiff have an award of reasonable attorneys' fees and expenses of

litigation;

(g) that all costs of this action be taxed to Defendant;

(h) that all issues triable by jury be tried by a jury; and

(i) for such other and further relief as unto this Court may seem just and

equitable in the premises.

This 9th day of April 2010.

John W. Roper

Prepared by:

John W. Roper
5353 Veterans Parkway, Suite A
Columbus, Georgia 31904
(706) 596-5353
johnroper@roperlaw.com
State Bar No: 614159